JAMES O'LEARY *vs.* BROCKTON STREET RAILWAY COMPANY.

Plymouth.   October 16, 1900. — November 28, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Personal Injuries —Negligence of Motorman.*

In this case, which was an action for personal injuries, the question whether the motorman was negligent in coming to the conclusion that he had room to pass the carriage in which the plaintiff was sitting, and in acting upon that conclusion, was for the jury on the evidence.

TORT, for personal injuries received in Brockton on September 13, 1897, as the result of a collision between a car of the defendant company and the carriage in which the plaintiff was sitting.

At the trial in the Superior Court, before *Mason,* C. J., it appeared that the plaintiff was driving northerly on Main Street, on the easterly side of the street, in the carriage path, between the tracks of the defendant and the sidewalk; that while so driving a friend on the sidewalk spoke to him, and he stopped, his horse's head being next the sidewalk, the carriage being at an angle with the line of the sidewalk, the left hand wheel being from two feet to thirty inches from the easterly rail of the defendant's track; that the hour was after sunset, but objects were visible for a considerable distance; that the car approached the plaintiff from the south, behind him, and the track was straight for a distance of about fifteen hundred feet from the point of collision south, in the direction from which the car came; that just at the point of collision the track began to curve slightly; and that the car struck the left rear wheel of

the carriage, pushed it ahead, breaking it somewhat, causing the horse to run, and inflicting severe injuries upon the plaintiff.

There was evidence for the plaintiff that he was driving in an open wagon, in the carriage way, on the easterly side of the road, between the easterly rail of the car track and the sidewalk; that he stopped to speak to a friend on the sidewalk, turning the horse's head slightly towards the sidewalk, his carriage wheel being entirely clear of the railway track; that he intended to stop far enough away from the track so as not to be hit by an approaching car; that while talking his carriage was struck from behind by the car, and that he did not hear the gong or any sound from the car.

The motorman testified that the car was proceeding from the south; that at the point of collision the track began to curve slightly; that at about one hundred and seventy-five feet south of the point of collision he shut off the power, and turned the brake up a little, for the purpose of reducing his speed before getting to the curve, but not for the purpose of stopping; that he did not notice the carriage until he was between sixty and seventy feet from it; that he thought he had room to clear the carriage wheel with the running board; that the running board projected two feet beyond the rail, and that he thought the carriage wheel was from twenty-six to thirty inches from the rail; that he did not notice the driver of the carriage, see him, or look to see what he was doing, or whether he was aware of the approach of the car; that he looked only at the wheel of the carriage; that he had been sounding his gong as he came along, but could not say whether he sounded it after seeing the carriage; that he had his car under control, and was able to, and did, stop it in a distance of six feet after the collision; that thinking he had room to go by, he did not attempt to stop until he struck, but that just before he struck the horse backed slightly, so as to bring the carriage within striking distance.

The conductor testified that he heard the gong ring, looked out and saw the carriage some seventy feet ahead; that he thought the car would clear, and paid no attention until the car was about ten feet away; that he thought the carriage was a little nearer, but that there was room to go by, and that then they struck it; that after the collision the car ran only about

six feet ; and that when he first looked they were running from five to seven miles an hour.

The plaintiff asked the judge to rule : 1. If the motorman could see the wagon in time to avoid collision with it, and failed to manage and control his car so as to avoid collision, the defendant is liable, 2. Even if the plaintiff was negligent in stopping his wagon so near the railway track as to leave it possible for a car to strike it, the defendant would still be liable if the motorman had opportunity to observe the danger of collision, time to avoid it, and failed to do so. 3. One traveller upon a public highway, having opportunity to notice the negligence of another, and time to avoid the consequences, is bound to avoid them, and if he fails to do so, and causes injury to the other, he is liable, notwithstanding the preceding negligence of the party injured.

The judge refused to rule as requested, and charged the jury as follows :

" The fact that the plaintiff is negligent or even wilful in his action to go upon the track gives the motorman no right to run over him. . . . The motorman has no right to take advantage of negligence on the part of the plaintiff ; but yet if he seeks to recover on the ground of negligence, that conduct will defeat his action.   He cannot recover in this action — if he has any action which he could sustain in that case, it would be for wilful injury. That would be wilful on the part of the motorman, and there is no evidence of that here, of wilful action by the defendant's agent.   So long as he stands on the negligence of the defendant, the doctrine of contributory negligence appears.   He must show that no negligence of his own contributed to the injury.

" If you find, upon the evidence, that he was not at fault, that is, if he failed to show that extreme alert watchfulness which might have been shown, but that he did show as much care and prudence as men of ordinary prudence and care would have shown under the same circumstances, then you have occasion to inquire whether there was negligence on the part of the defendant corporation ; and while the principle is just the same as applied to the motorman, the different circumstances may lead to different results.

" All that is required of the motorman is that degree of pru-

dence, that degree of care, which men of ordinary intelligence and prudence would use under the same circumstances. It must be determined with reference to any greater opportunity, if he had such, than the plaintiff had to see what was the condition there. If he had a better opportunity than the plaintiff had to determine whether there was sufficient room to pass, then he must be held to care proportioned to his opportunity. So, if he were operating a vehicle more dangerous to other travellers he must be held to a care proportioned to that.

" As a matter of law, if the motorman knew that there was not room to pass by the plaintiff's wagon without collision, he was guilty of negligence, upon the admitted evidence, because it is his own statement, and the contention of the defendant, that he had his car under perfect control, and was going at a rate of speed that would have enabled him to stop promptly had there been occasion to stop. If you find that he knew that there would be a collision if he kept on, then it was negligence for him not to use the control which he states he had, and stop the car. But I do not understand that there is any contention that he did know that there was that condition in fact. The contention is that he was not sufficiently careful to ascertain, and that, with the opportunities he had, he should have known that it was either certain that there would be a collision, or was so close a matter that it was not reasonably prudent to take the risk, and that he should have availed himself of the control of his car and have stopped.

" The burden is upon the plaintiff to establish this, and you are to judge of it as reasonable men, with reference to all the circumstances and conditions existing there, and see whether by a fair preponderance of the evidence the negligence of the motorman is established."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*W. F. Kane & R. O. Harris*, for the plaintiff.

*F. M. Bixby*, for the defendant.

HAMMOND, J. The plaintiff's requests for instructions were all properly refused. Each one of them makes it imperative under the conditions therein stated that the motorman should have taken such measures as would avoid a collision. But the

real duty upon him was simply to use reasonable care to avoid a collision.  The motorman testified that he saw the plaintiff's team and had complete control of his car, but he did not stop, because he thought there was room to go by.  It was a question for the jury whether in coming to that conclusion and acting upon it he was negligent.

No exceptions were taken to the instructions actually given, and they seem to have been sufficiently full.

*Exceptions overruled.*